**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

James D. Young,

    Plaintiff,

    v.                                Case No. 1:10cv483

Gannett Satellite                  Judge Michael R. Barrett
Information Network, Inc.,

    Defendant.

**OPINION & ORDER**

This matter is before the Court upon Defendant's Motion for Summary Judgment (Doc. 10), Plaintiff's Response in Opposition (Doc. 14), and Defendant's Reply (Doc. 17).

**I.    BACKGROUND**

Plaintiff James Young brings a claim of defamation against Defendant Gannett Satellite Information Network, Inc. ("Gannett").

On May 26, 2010, a Gannett paper, the *Milford-Miami Advertiser*, published a story about a City of Milford police officer who had been having sex with the mayor while the officer was on duty. (Doc. 9, Herron Dep., Ex. 2.) The article explained that the officer, Russell Kenney, only received a fifteen-day suspension, even though the police chief recommended termination. (Id.) The article included a quote from the police chief: "We were hoping this would go a little differently, but we had to go on what we've done in the past . . ." The article continued:

> Law Director Mike Minnlear said it was better for the city to suspend Kenney than to go through the process of having an arbitrator.

> In 1997, the Miami Township trustees terminated Sgt. James Young for a variety of charges including conduct unbecoming of a police officer, sexual harassment, immoral behavior, neglect of duty and gross misconduct. Young had sex with a woman while on the job.
>
> Young sued saying the trustees violated the collective bargaining contract between the township and the police union. An arbitrator agreed the Young, but the township fought the decision. Clermont County Court of Common Pleas Judge Robert Ringland ruled: "While this Court is not indicating it agrees with the arbitrator or condones the conduct which has occurred," based on other similar cases he could not set aside the arbitrator's decision. Young is a current employee with the Miami Township Police Department.

(Id.) Young maintains that the article is false because he did not have "sex with a woman while on the job." Young explains that Marcey Phillips, who worked as a dispatcher for Miami Township, made an internal complaint accusing Young of sexually harassing her. (Doc. 8-1, at 17.) As part of the internal investigation into the complaint, Phillips took a polygraph test. (Id.) During the testing, Phillips revealed that Young forced her to perform oral sex on him. (Id.) Phillips claimed that Young ejaculated on her kitchen rug during the incident. (Doc. 8, James Young Dep. at 61.)

During the investigation, Young admitted to making certain sexual remarks about Phillips, but not directly to Phillips. (Doc. 8-1, at 17.) Young also told the investigator that he did on one or more occasions place his hands on Phillips, hug her and kiss her. (Id.) However, Young told the investigator that he had never engaged in sexual conduct with Phillips. (Id.)

A sample taken from Phillips' kitchen rug showed the presence of human semen. (Id.) However, DNA testing later revealed that the semen on the rug did not belong to Young. (Herron Dep. at 252, 299, 328.)

The investigating officer concluded that "the complaint is found to be sustained

2

based upon sufficient evidence that Sgt. Young violated criminal law and or Dept. Policy Rules or Regulations." (Doc. 8-1, at 6.) Based on the investigation, the officer recommended to the Miami Township Board of Trustees that Young be discharged. (Doc. 8-1, at 3.) The evidence collected during the investigation was made part of a written report entitled "Professional Standards Investigation." (Doc. 8-1.)

Young contested the recommendation that he be terminated under the collective bargaining agreement. (Doc. 8-1, at 9.) The arbitrator found that Phillips' allegation that Young forced her to perform oral sex was "not supported by the evidence." (Doc. 8-2, at 114.) The arbitrator also found that the evidence and testimony created doubts as to whether the physical touching between Young and Phillips was "uninvited and unwanted or whether it represented flirtatious activity between consenting adults." (Id. at 115, 116-117.) However, the arbitrator did find that Phillips made inappropriate sexual remarks about Phillips. (Id. at 118.) The arbitrator converted Young's termination to a suspension and ordered that Young be reinstated. (Id. at 119.) Judge Ringland of the Clermont County Court of Common Pleas confirmed the arbitrator's award. (Doc. 8-2, at 180.)

Gannett explains that before publishing the story, *Advertiser* editor Theresa Herron reviewed the public record covering Phillips' accusations against Young.[1] It is Gannett's position that even though these documents reveal that the rape charge could not be substantiated, there was evidence of a private relationship between two consenting adults. Gannett argues that on this basis, it is entitled to summary judgment on Young's

---

[1] Herron's name does not appear on the byline of the article. However, Herron has testified that she wrote the section of the article quoted above which begins with the words "in 1997" and ends with "the Miami Township Police Department." (Doc. 9, Herron Dep. at 15.)

3

defamation claim.

## II. ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a), as amended on December 1, 2010, provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id*. at 252.

### B. Defamation under Ohio law

There is no dispute that Young's defamation claim is governed by Ohio law. To prove a claim of defamation under Ohio law:

> First, there must be the assertion of a false statement of fact; second, that the false statement was defamatory; third, that the false defamatory statement was published by defendants; fourth, that the publication was the proximate cause of the injury to the plaintiff; and fifth, that the defendants acted with the requisite degree of fault.

*Celebrezze v. Dayton Newspapers, Inc.*, 535 N.E.2d 755, 759 (Ohio Ct. App. 1988) (citing Dupler v. Mansfield Journal Co., 413 N.E.2d 1187 (1980)).

The parties agree that as a police officer, Young is a public figure for purposes of his defamation claim. *Accord Soke v. Plain Dealer*, 632 N.E.2d 1282, 1284 (Ohio 1994) ("The United States Supreme Court has repeatedly recognized that police officers are public officials."). A public figure cannot recover for defamation unless the individual proves that the publication was made with actual malice. *New York Times Company v. Sullivan*, 376 U.S. 254, 279-280, (1964). Actual malice exists when the publisher makes the statement with knowledge of the statement's falsity or with reckless disregard of whether it was false or not. *Id.*

### C. Fair Report Privilege

Gannett first argues that Ohio's statutory "fair report" privilege requires dismissal of Young's defamation claim. Gannett explains that the reference to Young in the *Advertiser* article is based largely upon a judicial decision, which in turn is based on the arbitrator's decision. Gannett argues that both decisions fall within the protection of the statute, along with the internal affairs report and related documents.[2]

Ohio's fair report statute provides that:

> The publication of a fair and impartial report of the return of any indictment, the issuing of any warrant, the arrest of any person accused of crime, or the filing of any affidavit, pleading, or other document in any criminal or civil cause in any court of competent jurisdiction, or of a fair and impartial report of the contents thereof, is privileged, unless it is proved that the same was published maliciously, or that the defendant has refused or neglected to publish in the same manner in which the publication complained of appeared, a reasonable written explanation or contradiction thereof by the plaintiff, or that the publisher has refused, upon request of the plaintiff, to

---

[2] The Court questions the notion that all of these documents were in front of Judge Ringland in the Clermont County Court of Common Pleas, which is the only "court of competent jurisdiction" which reviewed Young's challenge to his termination. However, Judge Ringland's opinion does include a summary of what was contained in these documents.

publish the subsequent determination of such suit or action.

Ohio Rev. Code § 2317.05.  The privilege applies if the news report (1) deals with a matter of public concern; and (2) is a "fair and substantially accurate account" of the information contained in the police or other official government report.  *Dinkel v. Lincoln Publishing (Ohio), Inc.*, 638 N.E.2d 611, 613 (Ohio Ct. App. 1994) (citing Haynik v. Zimlich, 508 N.E.2d 195, 198 (Ct. Com. Pleas 1986)).  A court may conclude, as a matter of law, that the fair report privilege operates to relieve its proponent from liability for any alleged defamation.  *See Dinkel*, 638 N.E.2d at 614.

The parties disagree as to whether the *Advertiser* article is a "substantially accurate" account of the public record.  "A publication is substantially accurate if it conveys the essence of the official record to the ordinary reader, without misleading the reader by the inclusion of inaccurate extra-record information or the exclusion of relevant information in the record."  *Oney v. Allen*, 529 N.E.2d 471, 473 (Ohio 1988) (citing 3 Restatement of the Law 2d, Torts (1965) 300-301, Section 611, Comment f; Mark v. Seattle Times, 96 Wash.2d 473, 493, 635 P.2d 1081, 1092 (Wash. 1981)).  A plaintiff "cannot defeat summary judgment by raising purported minor discrepancies between the news reports and the official information."  *Dinkel*, 638 N.E.2d at 613.  As one Ohio court has explained:

> A news report is considered a substantially accurate account of official government information or of a government report if the 'gist' or the 'sting' of the allegedly defamatory aspects of the news report, taken as a whole, accurately reflects the substance of the judicial proceedings or other information obtained from official sources.  Errors as to secondary facts, that is, facts which do not change the import of the story or substantially alter the substance of the allegedly defamatory (but protected) aspect of the story, are not actionable.

*Id.* (citations omitted).

Gannett argues that the *Advertiser* article is a substantially accurate account of the public record because it includes references to Young's challenge to his termination and his eventual reinstatement. The Court disagrees. The "gist" of the *Advertiser* article is that even though Young had "sex with a woman while on the job," he remains an employee of the Miami Township Police Department. While the arbitrator and Judge Ringland concluded that there was some type of relationship between Young and Phillips, there was never any conclusion that Young had sex with Phillips while on the job. While the internal investigator concluded that Phillips' accusation of rape was sustained, the arbitrator found that the rape accusation was "not supported by the evidence." This factual finding was left undisturbed by Judge Ringland in his limited review of the arbitrator's decision. Regardless of what actually occurred, the *Advertiser* article does not convey the essence of the official record because it excludes this information. Therefore, the Court finds as a matter of law that Gannett has not established that the article is a substantially accurate account of the public record. Accordingly, Gannett is not entitled to protection under Ohio's statutory fair report privilege.[3]

### D.  Substantial truth

Gannett argues that even if it is not entitled to the fair report privilege, it can show that the article is substantially true.

In Ohio, "a defamation action may be completely defended by showing that the gist, or imputation, of the statement is substantially true, and, hence, the statement is not false."

---

[3] Because the Court concludes that the article is not "substantially accurate," it is not necessary to reach the issue of actual malice with respect to the fair report privilege. *See e.g., Martinez v. WTVG, Inc.*, 2008 WL 1700443, *6 (Ohio Ct. App. Apr. 11, 2008) ("In a qualified privilege case, 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity.").

7

*Sweitzer v. Outlet Communications, Inc.*, 726 N.E.2d 1084, 1090 (Ohio Ct. App. 1999) (citing Natl. Medic Serv. Corp. v. E.W. Scripps Co., 573 N.E.2d 1148, 1149-1150 (Ohio Ct. App. 1989)). Whether a defamatory statement is substantially true is a question of fact. *Id.*

As discussed previously, the "gist" of the *Advertiser* article as it relates to Young is that Young kept his job even though he had sex while on duty. This very point was the reason that Young was included in the article. Young's situation was used as an illustration of why Officer Kenny could not be terminated after it was discovered that he was having sex with the mayor while on duty. However, the Court finds that there is a genuine issue of material fact as to whether "Young had sex with a woman while on the job." Phillips made one allegation of sexual activity between herself and Young: the incident where she claims Young forced her to perform oral sex on him. As the arbitrator noted, the alleged incident "is a classic 'he said she said' scenario with no witnesses in attendance." (Doc. 8-2, at 114.) The arbitrator found that the evidence in the record did not support Phillips' claim. (Id.) No new evidence has been presented to this Court on this point, and therefore the record here is essentially the same as that which was before the arbitrator. Accordingly, Gannett is not entitled to summary judgment on this basis.

E. **Alternate innocent construction**

Gannett argues that this Court should apply the "innocent construction" rule as a complete defense to defamation.

"The 'innocent construction' rule provides that if a statement is 'susceptible to two meanings, one defamatory and one innocent, the defamatory meaning should be rejected,

8

and the innocent meaning adopted.' " *Gilbert v. WNIR 100 FM*, 756 N.E.2d 1263, 1275 (Ohio Ct. App. 2001) (quoting Sethi v. WFMJ Television, Inc., 732 N.E.2d 451, 459–460 (Ohio Ct. App. 1999)). However, the innocent construction rule "protects only those statements that are reasonably susceptible of an innocent construction." *Gupta v. The Lima News*, 744 N.E.2d 1207, 1214 (Ohio Ct. App. 2000) (quoting McKimm v. Ohio Elections Comm., 729 N.E.2d 364, 372 (Ohio 2000)). "To construe a publication in an unreasonable manner in order to give it an innocent interpretation is itself incompatible with the rule's requirement that words be given their 'natural and obvious meaning.'" *Id.* (quoting McKimm, 729 N.E.2d at 372). The question of whether an innocent or defamatory meaning of a statement is to be adopted is a question of law. *See Holley v. WBNS 10TV, Inc.*, 775 N.E.2d 579, 584 (Ohio Ct. App. 2002); *Sweitzer v. Outlet Commc'ns, Inc.*, 726 N.E.2d 1084, 1091 (Ohio Ct. App. 1999) ("Under the innocent-construction rule, whether a statement is defamatory will essentially always be a question of law.").

Gannett argues that the *Advertiser* article could be construed to mean that Young successfully challenged the allegation that Young had "sex with a woman while on the job" because Young was able to keep his job. The problem with this interpretation is that there is no indication from the article that there was only an *allegation* that Young had sex with a woman while on the job. Instead, the statement is made as if it were a proven fact, and despite this fact, Young was able to keep his job. While the article explains that Young challenged his termination, it only generically states that "Young sued saying the trustees violated the collective bargaining contract between the township and the police union." It would be unreasonable to interpret the *Advertiser* article as having an innocent

9

interpretation without more information included in the article. Moreover, Gannett cannot escape the juxtaposition of Young to Officer Kenney. According to the article, there was an investigative finding that Kenney had sex with the mayor while on duty and Kenny pleaded "true" to engaging in conduct unbecoming of an officer and willful disregard of department rules. The comparison the article makes between the two men negates any innocent interpretation. Therefore, the Court finds that the innocent construction rule is not applicable and Gannett is not entitled to summary judgment on this basis.

    **F.**    <u>**Incremental harm**</u>

Gannett next argues that Young's defamation claim fails under the "incremental harm" doctrine.

Under Ohio law, the incremental harm doctrine "measures the incremental reputational harm inflicted by the challenged statements beyond the harm imposed by the nonactionable remainder of the publication." *Ferreri v. Plain Dealer Publishing Co.*, 756 N.E.2d 712, 723 (Ohio Ct. App. 2001). "[I]f that incremental harm is determined to be nominal or nonexistent, the statements are dismissed as not actionable." *Id.* This determination is made as a matter of law. *Id.*

Gannett argues that the statement that "Young had sex with a woman while on the job" could not harm Young's reputation more than the harm already caused by the other statements in the article that Young was fired due to a finding of impropriety and was restored after a lengthy court battle.

The Court finds that the incremental harm doctrine does not bar Young's defamation claim. While the article does explain that Young was terminated "for a variety of charges

including conduct unbecoming of a police officer, sexual harassment, immoral behavior, neglect of duty and gross misconduct," this laundry list of general categories pales in comparison to the specific statement that "Young had sex with a woman while on the job." In addition, in contrast to the statement that Young was terminated "for a variety of *charges*," the statement that "Young had sex with a woman while on the job" is not couched in terms such as "allegedly" or "charged." The reputational harm inflicted by this statement goes beyond the harm imposed by the remainder of the article, and is more than nominal. Therefore, Gannett is not entitled to summary judgment on this basis.

### G. Actual malice

Finally, Gannett argues that Young's defamation claim is barred because he has not presented any evidence of actual malice.

A public figure plaintiff bears the burden of producing clear and convincing evidence of actual malice. *Kassouf v. Cleveland Magazine City Magazine*, 755 N.E.2d 976, 983 (Ohio Ct. App. 2001) (citing Gertz v. Robert Welch, Inc., 418 U.S. 323, 342 (1974); New York Times Co., 376 U.S. at 285-86). When presented with a summary judgment motion on a defamation claim brought by a public figure, courts "shall consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff to determine whether a reasonable jury could find actual malice with convincing clarity." *Jackson v. Columbus*, 883 N.E.2d 1060, 1064 (Ohio 2008) (citing Dupler v. Mansfield Journal Co., Inc., 413 N.E.2d 1187 (Ohio 1980)).

As this Court has recently explained, a showing of actual malice may be premised on evidence "demonstrating that the alleged defamer purposefully avoided or deliberately

ignored facts establishing the falsity of its statements." *Susan B. Anthony List v. Driehaus*, 2011 WL 3296816, *9 (S.D. Ohio Aug. 1, 2011) (citing Perk v. Reader's Digest Ass'n, Inc., 931 F.2d 408, 411 (6th Cir. 1991)).

This Court concludes that based on the evidence in the record, a reasonable jury could find actual malice. Herron testified that in researching the *Advertiser* article, she reviewed the internal affairs investigation report, the arbitrator's decision, and Judge Ringland's decision upholding the arbitrator's decision. (Herron Dep., at 43.) While the internal investigator concluded that Phillips' complaint was substantiated, none of the other documents reviewed by Herron support the statement that "Young had sex with a woman while on the job." Specifically, Herron testified that she read the arbitrator's decision that Phillips' allegation regarding oral sex was not supported by the evidence. (Id. at 55.) Herron also testified that she reviewed the DNA-testing results which showed that the semen collected from Phillips' rug did not belong to Young. (Id. at 54-55.) A reasonable jury could find that this testimony demonstrates that Herron purposefully avoided or deliberately ignored facts establishing the falsity of the statement that Young had sex with a woman while on the job. In addition, Herron's decision to omit any reference to the claim of rape could be read as an indication that Herron had some misgivings about the veracity of Phillips' complaint.[4] Accordingly, the Court finds that Gannett is not entitled to summary judgment on Young's defamation claim.

---

[4] The Court is aware that in discussing Phillips' claim of sexual harassment, the arbitrator noted that the evidence and testimony created doubts as to whether the physical touching between Young and Phillips was "uninvited and unwanted or whether it represented flirtatious activity between consenting adults." However, there is nothing in the record which would support a leap from "physical touching" to sex between Young and Phillips.

### III.     CONCLUSION

Based on the foregoing, it is hereby ordered that Defendant's Motion for Summary Judgment (Doc. 10) is **DENIED**.

**IT IS SO ORDERED.**

                                          */s/ Michael R. Barrett*
                                         Michael R. Barrett, Judge
                                         United States District Court