## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **JAMES D. YOUNG,** | : | Case No. 1:10CV483 |
| | : | |
| Plaintiff, | : | Judge Michael R. Barrett |
| | : | |
| vs. | : | **DEFENDANT'S MOTION** |
| | : | **FOR JUDGMENT** |
| **GANNETT SATELLITE** | : | **AS A MATTER OF LAW** |
| **INFORMATION NETWORK, INC,** | : | |
| | : | |
| Defendant. | : | |

Pursuant to Federal Rule of Civil Procedure 50(b), Defendant Gannett Satellite Information Network, Inc. ("Gannett") hereby moves the Court for Judgment as a Matter of Law in favor of Gannett on the above-captioned complaint. The facts established throughout the course of the trial, as well as the applicable law, demonstrate that a reasonable jury lacks a legally sufficient evidentiary basis to find in favor of Plaintiff.

Gannett respectfully requests a stay of execution of judgment in the above-captioned cause pending the Court's ruling on this Motion.

A Memorandum In Support of Gannett's Motion is attached.

Respectfully submitted,

*Of Counsel:*

 */s/ John C. Greiner*
**John C. Greiner** (0005551)
**Steven P. Goodin** (0071713)
*Attorneys for The Cincinnati Enquirer*

| | |
|---|---|
| GRAYDON HEAD & RITCHEY LLP | GRAYDON HEAD & RITCHEY LLP |
| 1900 Fifth Third Center | 1900 Fifth Third Center |
| 511 Walnut Street | 511 Walnut Street |
| Cincinnati, OH  45202-3157 | Cincinnati, OH  45202-3157 |
| Phone:  (513) 621-6464 | Direct:  (513) 629-2734 |
| Fax:     (513) 651-3836 | Fax:     (513) 651-3836 |
| | E-Mail:  jgreiner@graydon.com |

<u>MEMORANDUM IN SUPPORT OF</u>
<u>DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW</u>

## I.    <u>INTRODUCTION.</u>

Simply put, there is no way a reasonable jury can find for Plaintiff on this evidence while following the law.

Plaintiff James D. Young ("Plaintiff") is a public official.  As such, in order to prevail on his defamation claim, he must establish by clear and convincing evidence that Defendant Gannett Satellite Information Network, Inc. ("Gannett") acted with actual malice.  Gannett respectfully submits that, based upon the evidence adduced during the trial, a reasonable jury could <u>not</u> find sufficient evidence of actual malice or reputational harm.  Therefore, Gannett is entitled to judgment as a matter of law on Plaintiff's sole claim.

## II.    <u>JUDGMENT AS A MATTER OF LAW STANDARD.</u>

"Judgment as a matter of law, pursuant to Fed. R. Civ. P. 50, is appropriate when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'"[1]  In *Jackson v. FedEx Corporate Services, Inc.,* the Sixth Circuit concluded that judgment as a matter of law is appropriate "*whenever there is a complete absence of…proof on an issue material to the cause of action.*"[2]

In cases involving public figures, the Constitution itself is directly implicated. Accordingly, reviewing courts have a special responsibility to make certain that the facts have been correctly decided.[3]  Thus "[i]n cases raising First Amendment issues, an appellate court has an obligation to make an independent examination of the whole record to ensure that the

---

[1]    *DWS International, Inc. v. Meixia Arts and Handicrafts, Co.,* 2011 WL 4402956 (S.D. Ohio 2011), citing *U.S. Diamond & Gold v. Julius Klein Diamonds LLC,* 2009 U.S. Dist. LEXIS 44726 at *12, 2009 WL 1362555.

[2]    518 F.3d 388, 392 (6th Cir. 2008).

[3]    See *Bose Corp. v. Consumers Union of United States, Inc*., 466 U.S. 485, 486, 10 Media L. Rep. 1625 (1984).

judgment does not constitute a forbidden intrusion on the field of free expression."[4]  The Ohio

Supreme Court has also endorsed a heightened review of factual findings in such cases, noting

that "[j]ust as summary judgment procedures are 'especially appropriate in the First Amendment

area' … so too are directed verdicts."[5]  Indeed, the application of any lesser standard of review

could well "chill" the free expression of ideas about public matters.[6]

The *Bose* court noted that findings of actual malice should be particularly subject to

review: "Under *New York Times*, the question whether the evidence in the record of a defamation

case is of the convincing clarity required to strip the utterance of First Amendment protection is

ultimately a question of federal constitutional law."[7]  The Supreme Court later reaffirmed an

appellate court's duty to "independently review" the factual basis of an actual malice finding

while giving deference to the jury's credibility determinations.[8]

While many of these holdings directly address appellate review, the constitutional

principle is clear: The entire judiciary has a special obligation to ensure the protection of a free

press.  The application of this principle to the case at bar is self-evident.  Plaintiff is indisputably

a public figure.  And the jury apparently found that Gannett acted with actual malice in printing

the controverted news story about him.  The paucity of evidence supporting such a finding merits

immediate judicial review.  The constitutional implications of the verdict demand it.

---

[4]   *Id*.
[5]   *Grau v. Kleinschmidt*, 31 Ohio St. 84, 509 N.E.2d 399, 404-05 (internal citations omitted).
[6]   *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 12 Media L. Rep. 2297 (1986).
[7]   *Bose*, *supra*, at 486.
[8]   *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 16 Media L. Rep. 1881 (1989).

### III.    LAW AND ARGUMENT.

####    A.    Gannett is Entitled to Judgment as a Matter of Law On the Issue of Actual Malice.

Actual malice is defined as "publishing a statement with knowledge that it was false or with reckless disregard of whether it was false or not."[9]   Reckless disregard for whether a statement is false requires that the publisher of the statement subjectively possess a "high degree of awareness … of probable falsity"[10] or when the publisher "in fact, entertained serious doubts as to the truth of [its] publication."[11]

Unlike negligence or professional malpractice, actual malice is not determined by comparing the defendant's conduct to an objective standard of due care.[12]   Instead, the inquiry is concerned only with the defendant's subjective beliefs regarding the truth of the statements at the time of the publication.[13]   The Supreme Court has squarely held that even evidence of "extreme departure from professional standards" is insufficient to prove actual malice.[14]

The *Reuber* court emphasized the critical distinction between actual malice and professional due care.  In *Reuber*, the Fourth Circuit held that the trial court committed reversible error by instructing the jury that a publication's departure from professional standards was evidence of actual malice.  The appellate court expressly noted that the actual malice standard is entirely subjective – determined solely by the defendant's actual belief about the truthfulness of the statements – and not by how the defendant's conduct measured up to some objective standard.

---

[9]    *Scott v. News Herald* (1986), 25 Ohio St.3d 243, 496 N.E.2d 699, 704 (quoting *New York Times Co., supra,* at 279); *see also Jacobs v. Frank* (1991), 60 Ohio St.3d 111, 573 N.E.2d 609.

[10]    *Harte-Hanks Communications, Inc. v. Connaughton* (1989), 491 U.S. 657, 688, 109 S.Ct. 2678; *Garrison v. Louisiana* (1964), *379* U.S. 64, 74, 85 S.Ct. 209.

[11]    *St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 88 S.Ct. 1323.

[12]    *St. Amant v. Thompson,* 390 U.S. 727, 731-32 (1968).

[13]    *Reuber v. Food Chem. News, Inc.,* 925 F. 2d 703, 711 (4th Cir. 1991), *cert. denied,* 501 U.S. 1212 (1991).

[14]    *Harte-Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657, 665 (1989).

Mr. Young did not produce evidence at trial sufficient to satisfy his burden of proving, by clear and convincing evidence, that Gannett published the article with actual malice.  The sole evidence on the issue was the unrebutted testimony of Theresa Herron.  Ms. Herron testified that she wrote the sentence at issue based on her interpretation primarily of two public records – the Findings of the Miami Township Professional Standards Investigation ["the Findings"] (Jt. Ex. 3, p. 16), and the report of the Arbitrator [the Report"] (Jt. Ex. 3, p. 248 – 268).

The Findings confirm unequivocally that James Young forced a woman to perform oral sex on him while he was on duty.  This act – a violation of the Ohio Criminal Code – constituted gross misconduct, and the Township found Mr. Young guilty of that offense.

When Mr. Young took the matter to arbitration, the arbitrator found that the township failed to satisfy a "beyond a reasonable doubt standard" on the offense underlying the gross misconduct finding.  Specifically, the arbitrator found "the February 9, 1997 incident involving the accusation that Mr. Young forced Ms. Phillips to perform oral sex is not supported by the evidence." (Jt. Ex. 3, p. 262).

Ms. Herron testified that she interpreted that finding as stating that the arbitrator found an absence of force, but not an absence of sex.  That testimony was unrebutted.  Ms. Herron also noted that her interpretation was bolstered by numerous other passages from the Report indicating that Mr. Young and the woman had a "*private relationship between two consenting adults*." (Jt. Ex. 3, P. 265) (emphasis added).  There is no evidence of any finding that Mr. Young and the woman did **not** engage in consensual sex on the evening of February 9, 1997, while Mr. Young was, by his own admission, on duty.

Mr. Young further contends that the Miami Valley Crime Lab's conclusion that semen found at the woman's apartment did not match Mr. Young's DNA exonerated him, and that Ms.

4

Herron's disregard of the lab report demonstrates a purposeful avoidance of the truth.  This is simply not the case; no one other than Mr. Young ever viewed the report as *per se* exculpatory. There is no evidence that the Miami Township Police Department ever amended its Professional Standards investigation findings to state that Mr. Young was exonerated.  Mr. Young never presented expert testimony to that effect.  The Arbitrator was well-aware of the DNA evidence, and yet his Report does not conclude that the crime lab report exonerated Mr. Young.  Indeed, the Arbitrator makes his "consenting adults" finding while fully apprised of the DNA evidence.

Mr. Young argued that Ms. Herron's failure to review the DNA report constitutes a purposeful avoidance of the truth.  Yet the evidence at trial revealed that the DNA report was never in Ms. Herron's possession.  The only references to the report, in the materials she reviewed, were fleeting mentions summarizing the position of Mr. Young's union representatives.

In the end, there is no evidence that Ms. Herron was ever confronted with "the truth." For Mr. Young's purposes, **the truth** would be an unequivocal finding that Mr. Young did not have sex with a woman while on the job.  And to satisfy his burden, he would have needed to produce evidence that such "truth" existed, that Ms. Herron was confronted with that "truth," and that she ignored it.  Yet the Report does not contain any such "truth," or any such unequivocal finding.  To the contrary, repeated references to "a consenting adults" relationship appear to constitute a finding that Mr. Young **did** have sex while on the job.

At worst, the Report is ambiguous – and such ambiguity cannot serve as the basis for a finding of actual malice.  As the Supreme Court ruled in *Time, Inc. v. Pape,* "[t]he deliberate choice of [one of a number of possible rational interpretations of a document that bristled with ambiguities] … though arguably reflecting a misconception, [is] not enough to create a jury issue

of 'malice' under *New York Times*."[15]  This is what the evidence truly established, and no more. Such evidence does not – indeed, *cannot* – constitute actual malice.

At most (and Gannett does not concede this point), the evidence established that Ms. Herron ignored facts that supported Mr. Young's arguments made in his defense at the arbitration.  But that is a far cry from ignoring the **truth**.

Mr. Young relies heavily on the case of *Susan B. Anthony List v. Driehaus,* concluding that "a showing of actual malice may be premised on evidence 'demonstrating that the alleged defamer purposefully avoided or deliberately ignored facts establishing the falsity of its statements."[16]  Gannett does not disagree with this statement of law; however, the facts of the *Driehaus* litigation are wholly distinguishable from the facts of the case at bar.

In *Driehaus,* the Susan B. Anthony List (the "SBA List")  continued to state that "It is a fact that Steve Driehaus has voted for a bill that includes taxpayer funding of abortion" even after the Ohio Elections Commission ("OEC") found that there was probable cause that such a statement was false.  The SBA List went even farther stating that "even if the OEC finds the statement is false – we will double down and make sure that our message floods his district We've got radio ads going out all across his district."  *Id.* at *10, internal citations omitted.  In continuing to disseminate its statement about Representative Driehaus, the SBA List flagrantly ignored the unequivocal finding of an administrative body.

In this case, there is no evidence of any unequivocal finding by any tribunal which Ms. Herron ignored.  The evidence clearly shows that the internal affairs investigator unequivocally found that Mr. Young engaged in sex with a woman while on the job.  The evidence also shows

---

[15]    401 U.S. 279, 290 (1971), *see also, Bose, supra*, at 512.
[16]    *Driehaus,* 2011 WL 3296816, *9.

6

that the arbitrator did **not** overrule this finding in its entirety.  Thus, the *SBA List* case does not support Mr. Young's position.

Indeed, Mr. Young incorrectly argued that only an express sex-on-the-job finding in the Report could have supported Ms. Herron's story.  But that analysis turns the actual malice standard upside down.  Neither the Report of the Arbitrator nor the DNA report clearly and unequivocally reversed the Internal Affairs finding that Mr. Young had sex on the job.  As Mr. Young's version of the truth has never been established, there can be no evidence that Ms. Herron purposely avoided it.  Thus, no reasonable jury could conclude that she published the article with actual malice.

**B.      Gannett Is Entitled To Judgment As A Matter Of Law On Plaintiff's Claim For Defamation Because Plaintiff Failed to Establish Harm to His Reputation.**

As this court instructed the jury, "[d]efamation is a false written or oral statement that **injures another's reputation**." (emphasis added).  Harm to reputation is an element of the tort.

Mr. Young contends that the nature of the statement here is such that it constitutes "defamation *per se*."  He contends that he is, therefore, entitled to a presumption of harm to his reputation.  But that presumption is rebuttable.

The harm-to-reputation presumption is an evidentiary rule, not a substantive rule of law.  That is, the presumption permits a fact finder, in the absence of other evidence, to conclude the presumed fact of harm to reputation from the basic fact of the publication.  The presumption is not, however, "conclusive" or "irrebuttable" so as to amount to a substantive rule of law.[17]

Ohio courts have adopted this principle.  In *Wilson v. Wilson,*[18] the defendant allegedly made a statement that the court deemed *per se* defamatory.  In response, the defendant

---

[17]    See generally 21B Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure §5124 (2d ed. 2005).

[18]    2007 WL 127657 (Ohio App. 2d Dist. 2007).

introduced evidence that the people to whom the statement was uttered did not believe it, as well as evidence that the plaintiff suffered no adverse consequences.  The plaintiff thereafter presented no evidence of reputational harm.  As the court noted "[plaintiff] failed to meet his reciprocal burden by substantiating any compensatory damages arising from the alleged defamation … The trial court aptly described [plaintiff's] response ... as 'a collection of unsupported conclusory statements'…"[19] … The court entered judgment as a matter of law to the defendant.  Ohio's Seventh District Court of Appeals agreed with Wilson's view that "the presumption of damages in a defamation *per se* claim is rebuttable" in *Sayavich v. Creatore*.[20]

The application of this rebuttable presumption guts Mr. Young's damages claim. Mr. Young failed to present evidence sufficient justifying any award of compensatory damages in his case-in-chief.  Once Gannett introduced evidence of a lack of reputational harm, Mr. Young was required to introduce evidence of actual harm to his reputation.  He offered none, and therefore, he did not satisfy the elements of his defamation claim.

Gannett asked each of Mr. Young's witnesses if his reputation suffered in their eyes as a proximate result of the article.  Each witness – his wife, his daughter, Michael Ray, Al Fatute and Mary Wolff – testified that their opinion of Mr. Young did not change as a result of article. Even Chief Bailey, a defense witness, testified that his opinion of Mr. Young didn't change as a result of the article and that he didn't observe any effect on the officers in his department.  While Mr. Young felt like he was getting the cold shoulder at work, but he couldn't identify any specific officer whose opinion changed about him.

In addition to this evidence, Gannett introduced evidence that Mr. Young's reputation was already damaged from the events of 1997 – and that the damage was such that the article

---

[19]  *Id*.
[20]  2009 WL 3165555 (Ohio App. 7th Dist. 2009), ¶ 94.

could not harm him to any greater degree.  Al Fatute testified "I don't know that he ever restored what was lost with the Board of Trustees."  And Mr. Young testified himself that the Miami Township Law Director believes that as a result of the 1997 incident, Mr. Young "was not fit to serve as a police officer."  Mr. Young also testified that Miami Township Trustee Joe Uecker believes that "keeping Young out of the police department is in the best interest of every citizen of Miami Township and of law enforcement."  This evidence rebuts the presumption that any harm to Mr. Young's reputation resulted from the May 2010 article because it establishes that the harm to Mr. Young's reputation actually resulted from the 1997 incident itself.  Thus, Mr. Young was required to demonstrate that the May 2010 article caused reputational harm distinct from the very clear existing harm.

As noted above Mr. Young failed to present any evidence of reputational harm flowing proximately from the May 2010 article.  Moreover, Mr. Young failed to introduce any evidence of damage proximately resulting from the article.  He remains employed in the same position as he did before the article was published.  He was not reprimanded, disciplined or demoted as a result of the article.  In fact, he testified that he has no complaints about his job.  He is still married, and his wife and daughter professed their undiminished love for him in open court.  He has had no treatment for physical or psychological damage resulting from the article's publication.

The prejudice visited upon Gannett is clear.  The jury, under the mistaken impression that it was presented a blank check, found "compensatory" damages in the amount of $100,000 in the complete absence of any evidence that Mr. Young suffered any harm or damages at all.

Mr. Young relied on the presumption of harm to his reputation, but Gannett successfully rebutted that presumption.  Once it did so, Young was required to come forward with evidence of

9

actual harm to his reputation.  He failed to do so, and for this reason no reasonable jury could have awarded him damages.

## IV.     CONCLUSION.

Based on the foregoing, Gannett respectfully requests that the Court grant judgment as a matter of law to Gannett, notwithstanding the verdict.

Additionally, Gannett respectfully requests a stay of execution of judgment pending the Court's disposition of this Motion.  Proposed orders relative to both requests are attached.

Respectfully submitted,

*Of Counsel:*

/s/ John C. Greiner
**John C. Greiner** (0005551)
**Steven P. Goodin** (0071713)
*Attorneys for The Cincinnati Enquirer*

| | |
|---|---|
| GRAYDON HEAD & RITCHEY LLP | GRAYDON HEAD & RITCHEY LLP |
| 1900 Fifth Third Center | 1900 Fifth Third Center |
| 511 Walnut Street | 511 Walnut Street |
| Cincinnati, OH  45202-3157 | Cincinnati, OH  45202-3157 |
| Phone:  (513) 621-6464 | Direct:   (513) 629-2734 |
| Fax:      (513) 651-3836 | Fax:       (513) 651-3836 |
| | E-Mail:  jgreiner@graydon.com |
| | sgoodin@graydon.com |

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December 2011, I electronically filed the foregoing *DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record.

/s/ John C. Greiner
**John C. Greiner** (0005551)

10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **JAMES D. YOUNG,** | : | Case No. 1:10CV483 |
| | : | |
| Plaintiff, | : | Judge Michael R. Barrett |
| | : | |
| vs. | : | **[PROPOSED]** |
| | : | **ORDER STAYING** |
| **GANNETT SATELLITE** | : | **EXECUTION** |
| **INFORMATION NETWORK, INC,** | : | **OF JUDGMENT** |
| | : | |
| Defendant. | : | |

For good cause shown, the Court hereby stays the execution of any judgment or award associated with the above-captioned case number pending the disposition of Defendant's Motion for Judgment as a Matter of Law

It is so ORDERED.

_____

**BARRETT, J.**

11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JAMES D. YOUNG,** | : | Case No. 1:10CV483 |
| | : | |
| Plaintiff, | : | Judge Michael R. Barrett |
| | : | |
| vs. | : | **[PROPOSED]** |
| | : | **ORDER GRANTING** |
| **GANNETT SATELLITE** | : | **JUDGMENT AS A** |
| **INFORMATION NETWORK, INC,** | : | **MATTER OF LAW** |
| | : | |
| Defendant. | : | |

For good cause shown, the Court hereby grants Defendant's Motion for Judgment as a Matter of Law notwithstanding the verdict. Neither the verdict nor the award of the jury are supported by the evidence when viewed in light of applicable law.

Accordingly, the Court hereby enters judgment in favor of the Defendant. The previous verdict and award of the jury empanelled in this action is hereby vacated and set aside.

It is so ORDERED.

                                           _____

                                           **BARRETT, J.**

3462978.1