UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

James D. Young,

    Plaintiff,

    v.    Case No. 1:10cv483

Gannett Satellite
Information Network, Inc.,    Judge Michael R. Barrett

    Defendant.

## OPINION & ORDER

This matter is before the Court pursuant to Defendant's post-trial Motion for Judgment as a Matter of Law (Doc. 42). This motion has been fully briefed (Docs. 43 and 44).

**I.  BACKGROUND**

The trial in this matter was held December 16, 2011 through December 21, 2011. The jury found for Plaintiff, awarding $100,000 in compensatory damages.

Plaintiff James Young, a Sergeant in the Miami Township Police Department, claimed defamation based on an article published by Defendant in its newspaper, the *Milford-Miami Advertiser*. The article was written by Theresa Herron, the editor of the newspaper. The subject of the article was a City of Milford police officer, Russell Kenney, who had been having sex with the mayor while the officer was on duty. The article explained that the officer only received a fifteen-day suspension, even though the police chief recommended termination. The article included a quote from the police chief: "We were hoping this would go a little differently, but we had to go on what we've done in the

past and suspend him. . . . The state arbitrator is putting people back to work with things like this." The article continued:

> Law Director Mike Minnlear said it was better for the city to suspend Kenney than to go through the process of having an arbitrator.
>
> In 1997, the Miami Township trustees terminated Sgt. James Young for a variety of charges including conduct unbecoming of a police officer, sexual harassment, immoral behavior, neglect of duty and gross misconduct. Young had sex with a woman while on the job.
>
> Young sued saying the trustees violated the collective bargaining contract between the township and the police union. An arbitrator agreed with Young, but the township fought the decision. Clermont County Court of Common Pleas Judge Robert Ringland ruled: "While this Court is not indicating it agrees with the arbitrator or condones the conduct which has occurred," based on other similar cases he could not set aside the arbitrator's decision. Young is a current employee with the Miami Township Police Department.

(Jt. Exh. 2.)

Young's claim for defamation is based on the statement that he "had sex with a woman while on the job." At trial, Young explained that in 1997, Marcey Phillips accused him of forcing her to perform oral sex on him while he was on duty. (Doc. 32, at 17, 30.) Phillips filed a complaint with the police department against Plaintiff. (Id. at 8.) The complaint was investigated, and semen was found on a kitchen rug in Phillips' home. (Doc. 32, at 31, 33.) Based on an internal investigation, Plaintiff was terminated. (Id. at 34.) However, it was later determined through DNA testing that the semen did not belong to Plaintiff. (Id. at 33.) Plaintiff filed a grievance over his termination, and a hearing was held before an arbitrator. (Id. at 34, 36.)

In a written decision, the arbitrator found that Phillips' allegation that Plaintiff forced her to perform oral sex was "not supported by the evidence." (Jt. Exh. 3, at 263.) However, the arbitrator did find that Plaintiff made inappropriate sexual remarks about

2

Phillips. (Id. at 266-67.)

On appeal, Judge Ringland noted that "[t]he arbitrator found that Young was guilty of sexual harassment by making inappropriate sexual remarks about Phillips," but "[d]espite these facts, the arbitrator ordered that Young be reinstated and that his termination be converted to a sixty-day suspension." (Id. at 326.) Judge Ringland concluded:

> this Court is constrained by the standards of review permitted in upholding this arbitration decision. While this Court is not indicating it agrees with the arbitrator or condones the conduct which has occurred, nevertheless, based on the above, the Plaintiff's motion to vacate the arbitration decision is denied.

(Id. at 329.)

## II. ANALYSIS

### A. Judgment as a Matter of Law

Defendant brings its Motion for Judgment as a Matter of Law pursuant to Federal Rule 50(b), which provides:

> **Renewing the Motion After Trial; Alternative Motion for a New Trial.** If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. . . . In ruling on the renewed motion, the court may:
>
> (1) allow judgment on the verdict, if the jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b). The Sixth Circuit has highlighted "the importance of distinguishing between Rule 50(b) motions which challenge the sufficiency of the evidence supporting the

3

jury's findings, and Rule 50(b) motions based strictly on legal questions." *Century Business Services, Inc. v. Utica Mut. Ins. Co.*, 122 Fed.Appx. 196, 200 (6th Cir. 2005). Where a Rule 50(b) motion challenges the sufficiency of the evidence supporting a jury's findings in a diversity case, a state law standard of review is applicable. *K & T Enterprises, Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996).

In Ohio, the standard of review is as follows:

> The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.

*Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 742 (6th Cir. 1999) (quoting Gladon v. Greater Cleveland Reg'l Transit Auth., 662 N.E.2d 287, 294 (Ohio 1996)); *Cantrell v. Cummins v. JGB Industries, Inc.*, 4 Fed.Appx. 270, 273 (6th Cir. 2001) (explaining that "the motion may be granted only if 'there can be but one reasonable conclusion as to the proper verdict.'") (quoting Cantrell v. GAF Corp., 999 F.2d 1007, 1014-15 (6th Cir. 1993)).

Defendant raises two grounds for judgment as a matter of law: (1) Plaintiff failed to establish the element of actual malice required to prevail in his defamation claim; and (2) Plaintiff failed to establish harm to his reputation.

### B. Actual Malice

As a public figure, Plaintiff cannot recover for defamation unless he proves that the publication was made with actual malice. *New York Times Company v. Sullivan*, 376 U.S.

254, 279-280 (1964). Actual malice exists when the publisher makes the statement with knowledge of the statement's falsity or with reckless disregard of whether it was false or not. *Id.*

At trial, Young testified that he never had sex with Phillips or any woman while he was on duty as a police officer. (Doc. 32, at 50.) In its Motion for Judgment as a Matter of Law, Defendant does not dispute that the statement that Plaintiff "had sex with a woman while on the job" is false, but instead argues that there was insufficient evidence of actual malice.

At trial, Plaintiff testified that Herron never contacted him before the article was published. (Doc. 32, at 50, 56.) Herron also testified that before the article was published, the documents contained in Joint Exhibit 3 were available to her at the *Advertiser's* offices. (Doc. 30, at 13.) The documents include the Miami Township Police Department's Professional Standards Investigation of Phillips' complaint, the arbitrator's written decision in Plaintiff's challenge to his termination, and Judge Ringland's decision upholding the arbitrator's decision.

Herron testified that she did not read all of documents in Joint Exhibit 3, but she testified that she knew that based on the documents, the DNA testing showed that the semen found on the rug where Phillips claimed the oral sex took place did not belong to Plaintiff. (Id. at 26.) Herron testified that she did not consider the DNA evidence important. (Id. at 27.) Herron also testified she read the arbitrator's decision and Judge Ringland's decision. (Id. at 13, 16.) Herron specifically testified that she read all of the arbitrator's decision. (Id. at 17.)

The Court notes that the arbitrator's decision is filled with strongly-worded

5

statements which call into doubt the complaint made by Phillips as well as her general credibility:

- I found that both the Grievant and Ms. Phillips lacked credibility in this case. This lack of credibility impacted the strength of both parties' cases; however, the party with the burden of proof can least afford this type of problem. The reasonable doubt raised by Marcey Phillips' lack of credibility caused the Employer to fail in meeting its burden of proof to sustain a discharge action. (Jt. Exh. 3, at 258.)

- . . . what tipped the scales in favor of the Union was Ms. Phillips' well documented history of histrionic (i.e. tendency to exaggerate for her personal benefit) behavior that seriously undermined her credibility. The Union produced witness after witness that created a cloud of suspicion over Marcy Phillips' propensity to fabricate and exaggerate. . . . Ms. Phillips' conduct in past relationships reveals an inveterate pattern of deceit that is represented in her relationship with Fred Fatute and with the Grievant. (Id. at 259.)

- The record is replete with examples of Ms. Phillips' manipulative and disingenuous conduct. (Id. at 260.) (recounting Phillips' false claim of being engaged to two different men, Phillips' misleading claim of being diagnosed with cancer, seven unsubstantiated complaints of stalking filed by Phillips)

- In regard to the instant matter, the testimony of Ms. Phillips regarding her being pursued by Mr. Young is undermined by that [sic] fact she frequently initiated contact with him. . . . Why would a **reasonable women** [sic] who is being sexually harassed over an extended period of time, page the person who is allegedly harassing and ask this person to come over to her apartment after midnight on a Saturday? . . . This act of calling the Grievant at midnight not only undermines her credibility, it takes on even greater significance when juxtaposed with Ms. Phillips' official testimony before the Miami Township Trustees on April 1, 1997. While appearing before the official body that must determine the continued employment of one of its police officers, **Ms. Phillips answered "No" to the question, "Were these contacts with ah [sic] officer . . . Sergeant Young, were they initiated by you?"** (Id. at 261.) (emphasis in the original) (citation omitted)

- I find the February 9, 1997 incident involving the accusation that Mr. Young forced Ms. Phillips to perform oral sex is not supported by the

6

> evidence. This is a classic "he said, she said" scenario with no witnesses in attendance. There was no physical evidence to substantiate Ms. Phillips' claim. . . . I also agree with the Union's observations that it seems odd that Ms. Phillips would continue to call a person whom she alleges had forcibly raped her, by his nickname "Cheetos." (Id. at 263.)

- This case is characterized by widely conflicting versions of the facts. As stated above, the real truth about what went on between Ms. Phillips and Mr. Young may lie between what the Employer claims and what the Union claims. (Id. at 265.)

The Court also notes that there is nothing in the arbitrator's opinion stating that Plaintiff "had sex with a woman while on the job." In fact, the arbitrator made several statements that it was not possible to determine what actually happened between Phillips and Plaintiff. For example, the arbitrator stated that: "[t]he lack of truthfulness by both parties in this matter prevents any reasonable assessment of what happened on February 9th." (Id. at 263.) However, after reading this statement, Herron decided to make her own assessment and determined that Plaintiff "had sex with a woman while on the job."

As this Court has previously recognized, a showing of actual malice may be premised on evidence "demonstrating that the alleged defamer purposefully avoided or deliberately ignored facts establishing the falsity of its statements." *Susan B. Anthony List v. Driehaus*, 2011 WL 3296816, *9 (S.D. Ohio Aug. 1, 2011) (citing Perk v. Reader's Digest Ass'n, Inc., 931 F.2d 408, 411 (6th Cir. 1991)). The Court is satisfied that there was sufficient evidence presented at trial "upon which reasonable minds may reach different conclusions" on the issue of actual malice. Therefore, Defendant's Motion for Judgment as a Matter of Law is DENIED on this basis.

### C. Harm to reputation

Defendant argues that Plaintiff failed to rebut evidence presented at trial regarding

the harm to Plaintiff's reputation.  Defendant points out that each witness called by Plaintiff testified that their opinion of Plaintiff did not change as a result of the article.  Defendant also points out that Plaintiff's reputation was already damaged as a result of the 1997 incident involving Phillips.

In Ohio, "[d]amages for defamation may include impairment of reputation, personal humiliation, mental anguish and suffering."  *Kluss v. Alcan Aluminum Corp.*, 666 N.E.2d 603, 609 (Ohio Ct. App. 1995); *Lansdowne v. Beacon Journal Publishing Co.* 512 N.E.2d 494 (Ohio 1987) (explaining that "types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.").  In other words, damages are not measured only in terms of damage to the plaintiff's reputation, but also include emotional damages.  *See Smith v. Papp*, 683 N.E.2d 384, 391 (Ohio Ct. App. 1996) (concluding that motion for directed verdict on defamation claim was properly denied where "testimony at trial demonstrated that plaintiff had emotional distress, humiliation and depression following the publication of the communication").

At trial, Kendra Lee Young, Plaintiff's wife, testified that after the *Advertiser* article was published, her husband was "very upset, kind of withdrawn, didn't sleep overly well, just kind of consumed with what was going on about the information that was in the newspaper." (Doc. 31, at 8.)  Albert Fatute, a police sergeant with the Miami Township Police Department, testified that Plaintiff brought the *Advertiser* article into his office and "became emotional." (Doc. 31, at 22.)  Fatute described Plaintiff as having "a mixture of anger and frustration and a lot of emotion." (Id.)  Finally, Plaintiff himself stated that in

8

reaction to the *Advertiser* article, he was "infuriated, humiliated, tormented, just defenseless." (Doc. 32, 51).

The Court concludes that there was sufficient evidence presented at trial "upon which reasonable minds may reach different conclusions" on the issue of Plaintiff's damages. Therefore, Defendant's Motion for Judgment on as a Matter of Law is DENIED on this basis.

### III. CONCLUSION

Based on the foregoing, it is hereby ordered that Defendant's Motion for Judgment as a Matter of Law (Doc. 42) is **DENIED**.

**IT IS SO ORDERED.**

          */s/ Michael R. Barrett*
          Michael R. Barrett, Judge
          United States District Court